IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 25, 2001

# RICHARD LEE FRANKLIN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Cumberland County**
**No. 3354     Leon C. Burns, Jr., Judge**

---

**No. E2000-01398-CCA-R3-PC**
**May 30, 2001**

---

In his original trial, the Petitioner, Richard Lee Franklin, was convicted of first degree murder by a Cumberland County jury for the death of David Kirkland. Due to procedural errors at Petitioner's first trial, the trial court granted Petitioner's motion for a new trial. Petitioner was retried and the jury convicted him of second degree murder. The trial court sentenced the Petitioner to twenty-two years of incarceration. State v. Richard Lee Franklin, No. 03C01-9706-CR-00219, 1998 WL 458580, at *1, Cumberland County (Tenn. Crim. App., Knoxville, August 10, 1998), perm. to appeal denied (Tenn. 1999). Subsequently, Petitioner filed a petition for post-conviction relief which was denied. In this appeal as of right, he asserts that the post-conviction court erred in finding his trial counsel's performance to be effective. Specifically, the appellant contends that trial counsel was ineffective for (1) failing to investigate and present witnesses that would support a defense of self-defense; (2) for failing to discuss trial strategies and defenses with the Petitioner; and (3) for failing to request an instruction on self-defense. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal As Of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which GARY R WADE, P.J., and JERRY L. SMITH, J., joined.

Allison M. Barker, Crossville, Tennessee, for the appellant, Richard Lee Franklin.

Paul G. Summers, Attorney General and Reporter; Laura E. McMullen, Assistant Attorney General; William E. Gibson, District Attorney General; Anthony J. Craighead, Assistant District Attorney General; and Ben Fann, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

In the direct appeal of Petitioner's convictions, this Court summarized the facts as follows:

> During an evening in November 1992, David Kirkland, the victim, and his girlfriend, Michelle Burnette, went to Bob's Bar in Cumberland County. Once inside, they then began playing pool against the appellant and his wife. The bet was for a beer. When Michelle failed to call a pocket on her first shot, the appellant's wife swore at her. As the game continued, the appellant's wife continued to swear at the victim and his girlfriend under her breath. After losing the game, the victim and his girlfriend went to the bar to buy beers for the appellant and his wife. The appellant's wife approached them and said, "F--- you." The victim then responded, "You can take those 'f--- yous' and stick them up your ass!" The appellant heard the victim's comment and began to approach the victim and Michelle who were moving toward the front door.

> Larry Walker, a friend of the victim's, saw the appellant moving toward the victim with a cue stick. Walker confronted the appellant and the two began fighting. Willard Kennedy, the bartender, pulled Walker off the appellant. The appellant yelled at his wife to get his gun and then ran outside of the bar. The bartender locked the front door. The appellant went to his vehicle, ripped open the glove compartment, and got his weapon.

> In the meantime, the bartender broke up the fight and ordered everyone to leave the bar. As the bartender opened the front door, the appellant pushed his way inside and asked, "Where did the son of a bitch go?" The victim, who was beside the door, said, "Here I am." The appellant reached around Kennedy, lifted his gun, and shot the victim in the chest. The victim fell to the floor and was dead within moments.

> According to the appellant's testimony, the victim started the verbal confrontation. The appellant testified that he went to get his gun because his wife was being beaten. The appellant testified that the gun discharged accidentally when the victim struck the appellant with a cue stick. He was vigorously cross-examined by the state. The jury accredited the testimony of the state's witnesses.

State v. Franklin, 1998 WL 458580, at *1.

## POST-CONVICTION HEARING

The post-conviction court conducted an evidentiary hearing, after which it found that the Petitioner was not denied the effective assistance of counsel at trial, and it denied the petition for

post-conviction relief. The Petitioner, his counsel from both trials, and Sheri Trisdale testified at the post-conviction hearing.

Mike Raulston, Petitioner's lead counsel at his second trial, testified that he was assisted by Larry Warner, counsel from Petitioner's first trial. Raulston stated that he and Warner interviewed the witnesses from Cumberland County, but that he also had the benefit of the transcript from the first trial which contained much of the witnesses' testimonies. He could not recall how many times he had met with the Petitioner to discuss the case, but did recall discussing the trial strategy for the second trial with Petitioner. Raulston testified that prior to trial he had discussed with the Petitioner the possibility of raising self-defense and "defense of others" as defenses. Raulston implied that, since the trial judge at Petitioner's first trial had declined to charge these defenses, he believed he would get the same ruling at the second trial, and therefore did not pursue these defense theories. He explained that the trial court had based its prior ruling on a showing in the proof that the fighting inside the bar had stopped by the time the Petitioner had re-entered the bar. Counsel further testified that self-defense was also not possible, because the Petitioner's testimony was that he had not seen the cue stick, with which he alleged the victim hit him.

Counsel stated that he also attempted to pursue a "defense of corpus delicti," as there was an issue as to what caused the death of the victim -- the gunshot by the Defendant or the victim being struck on the head with a cue ball by someone else. He testified that he tried to show "corpus delicti" through the testimony of Dr. Barnawell, the medical examiner. Raulston stated that, because Dr. Barnawell was out of town at the victim's death, no autopsy was performed on the victim. However, the victim's death certificate stated that the cause of death was a gunshot wound. Raulston stated that Dr. Barnawell testified that he could not say to a reasonable degree of medical certainty that the cause of death was a gunshot wound. Without an autopsy, Dr. Barnawell could not rule out the possibility that the victim's death was caused by the blow to the head with a cue ball. Counsel stated that he decided to proceed primarily with the defense of an accidental shooting, since the Petitioner's testimony was that the victim had hit him in the face with a cue stick, which caused the gun in his hand to accidentally fire.

Raulston also recalled talking with Sheri Trisdale the day that the second trial began. He decided not to call Trisdale as a witness, because the transcript of the first trial showed that she had made a statement that would be damaging to Petitioner's case. Trisdale had stated, "Mr. Franklin's going out to get his gun. He's going to come back and kill him." Raulston said that, while Trisdale could have testified to the fact that the victim, Kirkland, had been drinking, Kirkland's drinking was not an issue. He also remembered Trisdale telling him that the bartender was also drinking that night, but he regarded this testimony as irrelevant to the theory of an accidental shooting. Raulston believed that Trisdale's statement concerning the Petitioner going to get his gun and coming back to kill the victim, would be viewed more strongly by the jury than any testimony about the bartender's drinking.

Raulston testified that he also tried to give support to a theory that the victim was the first aggressor. The testimony of Larry Walker, a good friend of the victim, was used to show that the

victim liked to fight and that the two men would drink together two to three times a week. Counsel stated that Walker's testimony allowed the defense to convey the idea of self-defense to the jury. Counsel further testified that he did not recall checking the victim's background for prior convictions, but he did investigate to find that the victim "drank and he ran around." However, Raulston stated that he did not pursue the victim's background heavily, because he did not think the information would be admissible evidence. Counsel testified that he was not aware that the victim had been charged with aggravated assault and assault with a deadly weapon. Neither was counsel aware that Donnie Maynard, a patron at the bar on the night of this incident, had been a witness to the prior assault with a deadly weapon charge brought against the victim. Counsel testified that the defense strategy was to take the emphasis off of the deceased as a victim and show the deceased as one who invited this trouble by hitting the Petitioner in the face with a cue stick, thereby causing the gun in Petitioner's hand to fire.

On cross-examination, Raulston testified that the defense presented the testimony of a dentist, an oral surgeon, the victim's girlfriend and the Petitioner to show that the gun fired because the Petitioner was hit in the mouth. The dentist and oral surgeon testified to the severity of the tooth and jaw injury suffered by the Petitioner, and that he would not be able to talk after the injury. The victim's girlfriend testified to talking with the Petitioner outside the bar, before the Petitioner went back in with his gun. The Petitioner testified that "he was hit in the face, he saw stars, and the gun went off, and he didn't know what happened." Counsel stated that he made all possible arguments on behalf of the Defendant, and that he made the decision not to call certain other witnesses because he believed their testimony would hurt, rather than help the Petitioner's case.

Larry Warner, Petitioner's counsel from the first trial, testified that he assisted Raulston with Petitioner's second trial. Warner did not recall interviewing any witnesses in preparation for the second trial. He stated that he, Raulston and Petitioner were in agreement on the defense theory to be pursued in the second trial. He did not recall whether a background check had been performed on the victim, in either the first or second trial. He stated that the defense theory was to show a hybrid between the defense of defense of others (in that Petitioner went to get the gun to protect his wife) and an accidental discharge of the gun upon re-entering the bar and being hit in the face by the victim.

Sheri Trisdale testified that she was a witness at the Petitioner's first trial. She stated that she was also subpoenaed to testify at the second trial, but, upon arriving at court Raultson told her that she would not need to testify, because she had been a damaging witness in the first trial. Trisdale explained that, at the first trial, she testified that she thought she had heard the Petitioner say, "I'm going to get my gun." She asserted that, on the evening of the shooting, the victim had been drinking alcohol, along with the bartender. She testified that she witnessed the fight between the victim, his friends, the Petitioner and his wife. Trisdale testified that the victim hit the Petitioner's wife's head against the pool table, and she helped defend Petitioner's wife by shoving the victim and telling him to leave her alone. She stated that the Petitioner left the bar and went outside, and returned three to four minutes later. By the time the Petitioner returned, the victim had stopped hitting Petitioner's wife. Trisdale heard the Petitioner state that he did not want any trouble,

4

but the victim began to walk toward the Petitioner. Trisdale said that she did not see anything in the victim's hand; however, moments later she heard a shot.

The Petitioner testified that he met with Raulston three to four times prior to trial. Petitioner stated that he told Raulston his version of the story and what he remembered happening on the night of the shooting. The Petitioner asserted that his counsel only reviewed the transcript of the first trial, and did not interview key witnesses for the second trial. Petitioner testified that his counsel did not prepare him for trial or discuss trial strategy and defense options with him. The Petitioner stated that until the first day of trial, he thought Trisdale would be testifying for the defense and was surprised to hear that she would not be called as a witness. On cross-examination, Petitioner admitted that at the moment of the shooting, he was not defending his wife and that he had not asked the whereabouts of his wife. Petitioner acknowledged that without the testimony of Trisdale he received a lower conviction (second degree murder) at the second trial than at the first trial, which was first degree murder.

At the conclusion of the hearing, the trial court delivered oral findings in which it dismissed the Petitioner's petition for post-conviction relief. The post-conviction court found that counsel had thoroughly investigated Petitioner's case and devised sound trial strategies. The court stated that the Petitioner had failed to show how he had been prejudiced by counsel's failure to raise self-defense or the defense of others as defenses. The trial court also noted that the facts presented did not support those defenses, but did support counsel's theory of an accidental shooting. The court noted that Petitioner had failed to produce all of the appropriate witnesses to support his allegations. The post-conviction court concluded that Petitioner had been well represented by his counsel, and therefore had not met his burden of proof.

## ANALYSIS

I. Standard of Review

The 1995 Post Conviction Procedure Act provides that a petitioner seeking post-conviction relief has the burden of establishing his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). The trial court's findings of fact in a post-conviction hearing are afforded the weight of a jury verdict, and may not be re-weighed or re-evaluated by this Court. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Thus, a trial court's findings are conclusive on appeal unless the evidence in the record preponderates against those findings. State v. Burns, 6 S.W.3d 453, 461 (Tenn.1999). The court's application of the law to the facts, however, is reviewed de novo, without any presumption of correctness. Id. A claim of ineffective assistance of counsel raised on direct appeal is a mixed question of law and fact, and is also subject to a de novo review. Id.; see Jehiel Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001)

II. Ineffective Assistance of Counsel

In determining whether counsel provided effective assistance, this Court must decide whether counsel's performance was within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To prevail on a claim that his counsel was ineffective, a petitioner bears the burden of proving (1) his counsel's performance was deficient and (2) he was prejudiced by his counsel's deficient performance. Strickland v. Washington, 466 U.S. 668, 687 (1984); Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993). To prove that his counsel's performance was deficient, the petitioner must show that "the advice given or the service rendered was not within the range of competence demanded of attorneys in criminal cases. . ." Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991). The petitioner must establish that trial counsel's "acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). Under this second prong, the petitioner must show that the prejudice was such that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694; Butler v. State, 789 S.W.2d 898, 900 (Tenn. 1990).

When reviewing a defense attorney's actions, this Court may not use "20-20" hindsight to second-guess counsel's decisions regarding trial strategy and tactics. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Counsel's alleged errors should be judged at the time they were made in light of all the facts and circumstances. Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746.

A. Failure to Investigate and Present Witnesses

The Petitioner maintains on appeal that his attorney failed to properly investigate his case and call witnesses. When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing. Black, 794 S.W.2d at 757. Generally, this is the only way a petitioner can establish that (a) a material witness existed who could have been discovered but for counsel's neglect in the investigation of the case; (b) a known witness was not interviewed; (c) the failure to discover or interview a witness inured to his prejudice; and (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the appellant. Id.

The post-conviction court determined that the decisions Petitioner's counsel made concerning witnesses and the investigation of the case were tactical decisions that should not be judged in hindsight. The court concluded that Petitioner had not shown that his counsel was ineffective in his representation of Petitioner. The trial court noted that counsel's trial strategy proved effective in getting Petitioner a lesser conviction than he received in his first trial. We find that the evidence presented by Petitioner, including the testimony of Sheri Trisdale, does not preponderate against the trial court's findings. Therefore, we conclude that the trial court did not err in determining that the Petitioner's trial counsel was not ineffective for failing to investigate and call certain witnesses.

6

B. Failure to Discuss Trial Strategies

The Petitioner next asserts that his trial counsel was ineffective for failing to discuss trial strategies with him. The post-conviction court determined that Petitioner's counsel had effectively represented him and that Petitioner had failed to meet his burden of proof. Petitioner's counsel testified at the hearing that trial strategies were discussed with the Petitioner. The trial court accredited the testimony of counsel and Petitioner has not shown that the proof preponderates against the findings of the post-conviction court.

C. Failure to Request Instruction on Self-Defense

The Petitioner further contends that he received the ineffective assistance of counsel because his trial counsel failed to pursue a theory of self-defense. The post-conviction court stated

> But under the facts of this case, at least the evidence of the case, the jury decided what the facts were, I guess, but under the evidence in the case that was presented by the State's witnesses and the Defense witnesses, self-defense would not have worked, and I don't think you claim that. The only basis self-defense could have made [sic], "I saw him coming, he swung at me, and I raised my gun because I was in fear." There wasn't any testimony of that at trial or here today. "He hit me," was your testimony, contradicted by others, but, "He hit me, and I raised the gun in reflex, and it went off." Nothing to support a self-defense.

The trial court further stated that defense counsel "knew what defense he had, and what evidence he had to go with, and he made a decision in determining how to present the case that was in the best interest of his client, Mr. Franklin." The post-conviction court concluded that it would not second-guess counsel's strategy by suggesting that he should have raised other defenses, like self-defense. Again, Petitioner has failed to show that the proof preponderates against the post-conviction court's findings. Therefore, the Petitioner is not entitled to relief on this issue.

For the foregoing reasons, the judgment of the post-conviction court is AFFIRMED.

_____
THOMAS T. WOODALL, JUDGE